# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NOELEE LOEFFELBEIN, | ) |
| | ) DIVISION ONE |
| Respondent, | ) |
| | ) No. 68537-6-I |
| v. | ) |
| | ) UNPUBLISHED OPINION |
| STATE OF WASHINGTON, | ) |
| DEPARTMENT OF EMPLOYMENT | ) |
| SECURITY, | ) |
| | ) FILED: July 29, 2013 |
| Appellant. | ) |
| | ) |

DWYER, J.—Bartell Drugs discharged Noelee Loeffelbein from employment after she repeatedly violated the company's policy regarding cashing of personal checks. A commissioner of the Washington State Employment Security Department correctly determined that Loeffelbein was terminated for misconduct and thereby disqualified from receiving unemployment benefits. We agree, and reverse the superior court's ruling to the contrary.

I

Loeffelbein worked for Bartell Drugs from November 8, 1996 to March 10, 2010. At the time she was discharged, Loeffelbein was the manager of the University Way store in Seattle.

Bartell Drugs' employee manual contains a policy regarding acceptance of personal checks from employees. The policy states, in pertinent part:

10.9.3 Personal Check Acceptance Policy

When making purchases at any of our stores, you may make payment by personal checks.

The following types of checks, written by employee associates, will be accepted:

1. Personal checks made payable to the Bartell Drug company for the purchase of the merchandise.

2. Checks written for up to $50.00 over the amount of purchase (At manager's discretion).[1]

Loeffelbein acknowledged that she received a copy of the employee manual and was aware of the personal check policy. Nevertheless, between January 19 and February 16, 2010, Loeffelbein wrote a series of checks to Bartell Drugs in exchange for cash. Several of the checks were for $500.00 each, and the total amount of the checks was approximately $3,620.00. Loeffelbein gave the checks to an assistant manager and had the assistant manager place them in the cash register and give her the equivalent amount in cash.

As a result of an anonymous tip regarding Loeffelbein's actions, Bartell Drugs initiated an investigation. Loeffelbein admitted to Dave Siler, Bartell Drugs' director of loss prevention, that she had written seven to eight personal

---

[1] A copy of the policy is not part of the administrative record. However, it was discussed at length during the administrative hearing and Loeffelbein attached a copy of the policy to her brief in the superior court. Accordingly, we grant the Department's motion to supplement the record with a copy of the policy, pursuant to RAP 9.11.

checks that she had exchanged for cash totaling $3,620.00. In a written

statement, Loeffelbein admitted:

> Some of these checks were written to the store before payday
> knowing that they would be covered by my paycheck.[2] . . . In talking
> with Dave, I am now aware that my actions exceeded my authority.
> I did not have the authority to cash $500 checks at Bartell's and I
> did not have the authority to get an advance on my paycheck[3]
> which I did by writing checks before payday.

Bartell Drugs terminated Loeffelbein's employment on March 10, 2010.

The Department denied Loeffelbein's application for unemployment benefits,

finding that she was terminated for misconduct and therefore disqualified from

receiving benefits.

Loeffelbein appealed the Department's decision to the Office of

Administrative Hearings (OAH). An Administrative Law Judge (ALJ) held a

hearing at which Loeffelbein was represented by counsel. Loeffelbein testified

that she wrote several checks made out to Bartell Drugs in the amount of

$500.00 so that she could take $500.00 in cash from the cash register.

Loeffelbein admitted that, at the time she wrote the checks, she was aware of the

company policy limiting "cash back" transactions to $50.00 over the amount of a

---

[2] At the time Loeffelbein was writing the checks, she believed that she did not have enough money to cover the checks but that she would have sufficient funds by the time the checks cleared because her paycheck would have been deposited. However, at the administrative hearing Loeffelbein presented bank statements showing that she did, in fact, have sufficient funds to cover the checks at the time that she wrote them.

[3] Bartell Drugs has a policy that paycheck advances must be approved by the vice president of human resources.

purchase. Loeffelbein claimed, however, that because the policy included the words "[a]t manager's discretion," and she was a store manager, she believed she had the ability to write checks in excess of $50.00. Loeffelbein stated that she had previously cashed a personal check written by another employee for $100.00, but could not remember any checks larger than that amount.

The ALJ issued an order setting aside the Department's decision. In doing so, the ALJ concluded that Loeffelbein's conduct did not constitute misconduct as defined in RCW 50.04.294(1)(a) because it did not amount to "willful or wanton disregard of the interests of the employer."

> A claimant's act in apparent violation of the employer's policy does not constitute disqualifying misconduct if the act had been routinely authorized by the claimant's immediate supervisor, and no disciplinary action had ever been instigated against the claimant for the act. In re Griswold, 102 Wn. App. 29, 15 P.3d 153 (2000).
>
> . . . .
>
> Though the claimant's actions were not the wisest choice, the checks were authorized by other managers on duty. Once the claimant's actions were reported to the employer, no warnings or other disciplinary action short of discharge was instigated. The testimony of the claimant clearly demonstrated that she did not understand her actions were in violation of the policy as she believed she had discretion to do what she did. This misunderstanding does not meet the statutory definition requiring willful or wanton disregard of employer policy, and therefore statutory misconduct is not established.

Bartell Drugs appealed the ALJ's decision to the commissioner of the Department. The commissioner adopted the ALJ's findings of fact, with the following modification:

The undersigned augments the findings to show that claimant wrote seven to eight checks to the employer for cash between January 19, 2010 and February 16, 2010. Each check was for approximately $500. At the time claimant was interviewed by the employer's investigator, claimant admitted that cashing the checks exceeded her authority and that she did so to get advances on her paychecks. Claimant had her second assistant or assistant manager perform the check cashing transactions for her. At hearing, when claimant explained her understanding of the employer's policy, she indicated she never thought about the amount, except as manager, she had discretion to cash checks for above $50.

The commissioner concluded that Bartell Drugs had established misconduct pursuant to RCW 50.04.294(1)(b) and (2)(f).

In the absence of credibility findings by the administrative law judge, the undersigned did not find claimant's version of events probable or reasonable. Claimant was aware of the employer's policy regarding employee check cashing and she herself could only recall a check for $100. In the undersigned's opinion, it was not reasonable for claimant to believe that as manager, she could approve her own checks for amounts over the employer's limit and have her subordinates complete the transactions. By engaging in the conduct described above, claimant did not act as a reasonably prudent person under the circumstances of her employment. Her conduct constituted an intentional violation of a company rule and was in willful disregard of standards of behavior the employer had a right to expect.

Loeffelbein appealed the commissioner's decision to the superior court. The superior court found that the commissioner's findings of fact were supported by substantial evidence. However, the superior court concluded that Loeffelbein's conduct did not constitute misconduct and reversed the commissioner's order denying her benefits. The Department appeals.

-5-

II

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the Employment Security Department. Tapper v. Emp't Sec. Dep't., 122 Wn.2d 397, 402, 858 P.2d 494 (1993). When reviewing agency action, this court "sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." Tapper, 122 Wn.2d at 402. Because this court sits in the same position as the superior court, we do not give deference to the superior court's rulings. Verizon Nw., Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). The decision on review is that of the commissioner of the Department, not the underlying decision of the administrative law judge. Verizon Nw., 164 Wn.2d at 915.

A commissioner's decision is considered "prima facie correct." Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006). The party asserting invalidity of agency action—in this case, Loeffelbein—carries the burden of proving the invalidity. RCW 34.05.570(1)(a); Daniels v. Emp't Sec. Dep't, 168 Wn. App. 721, 727, 281 P.3d 310, review denied, 175 Wn.2d 1028 (2012). We will reverse a commissioner's decision only if (1) the agency erroneously interpreted or applied the law, or (2) substantial evidence does not

support the decision, or (3) the order is arbitrary or capricious. RCW 34.05.570(3); Tapper, 122 Wn.2d at 402.

Whether an employee's actions constitute misconduct is a mixed question of fact and law. Tapper, 122 Wn.2d at 402. We review findings of fact to determine whether, based on the record, substantial evidence supported those findings. William Dickson Co. v. Puget Sound Air Pollution Control Agency, 81 Wn. App. 403, 411, 914 P.2d 750 (1996). Where findings of fact are unchallenged, we treat the findings as verities on appeal. Fuller v. Dep't of Emp't Sec., 52 Wn. App. 603, 606, 762 P.2d 367 (1988). We review de novo whether the commissioner correctly applied the law to the findings, according substantial weight to the agency's interpretation of the law. William Dickson, 81 Wn. App. at 407.

III

The Employment Security Act exists to provide compensation to individuals who are "involuntar[ily]" unemployed "through no fault of their own." RCW 50.01.010. Accordingly, an individual is disqualified from receiving unemployment benefits if he or she is discharged "for misconduct connected with his or her work." RCW 50.20.066. The statute provides a non-exclusive list of

No. 68537-6-I/8

conduct that constitutes misconduct.[4] In addition, certain types of conduct are

defined as misconduct per se.[5] Among these are a "[v]iolation of a company rule

if the rule is reasonable and if the claimant knew or should have known of the

existence of the rule." RCW 50.04.294(2)(f).

_____

[4] RCW 50.04.294(1) provides:
"Misconduct" includes, but is not limited to, the following conduct by a claimant:
    (a) Willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee;
    (b) Deliberate violations or disregard of standards of behavior which the employer has the right to expect of an employee;
    (c) Carelessness or negligence that causes or would likely cause serious bodily harm to the employer or a fellow employee; or
    (d) Carelessness or negligence of such degree or recurrence to show an intentional or substantial disregard of the employer's interest.
[5] RCW 50.04.294(2) provides:
The following acts are considered misconduct because the acts signify a willful or wanton disregard of the rights, title, and interests of the employer or a fellow employee. These acts include, but are not limited to:
    (a) Insubordination showing a deliberate, willful, or purposeful refusal to follow the reasonable directions or instructions of the employer;
    (b) Repeated inexcusable tardiness following warnings by the employer;
    (c) Dishonesty related to employment, including but not limited to deliberate falsification of company records, theft, deliberate deception, or lying;
    (d) Repeated and inexcusable absences, including absences for which the employee was able to give advance notice and failed to do so;
    (e) Deliberate acts that are illegal, provoke violence or violation of laws, or violate the collective bargaining agreement. However, an employee who engages in lawful union activity may not be disqualified due to misconduct;
    (f) Violation of a company rule if the rule is reasonable and if the claimant knew or should have known of the existence of the rule; or
    (g) Violations of law by the claimant while acting within the scope of employment that substantially affect the claimant's job performance or that substantially harm the employer's ability to do business.

Loeffelbein does not dispute that Bartell Drugs maintained a policy regarding the cashing of employees' personal checks. She furthermore does not dispute that the rule was reasonable and that she was aware of the rule. Instead, Loeffelbein argues that the rule was vague and she did not believe she was violating the rule.

Loeffelbein's claim is not supported by the evidence. The policy is clear. Bartell Drugs employees may write personal checks for the payment of merchandise. They may also write personal checks in an amount up to $50.00 over the amount of a purchase. The acceptance of such checks is at the store manager's discretion. Nowhere in the policy does it indicate that the amount of cash back an employee may receive is at the store manager's discretion.

Loeffelbein's conduct violated the policy for two reasons. First, the check acceptance policy requires that the checks be written for a purchase. None of the checks Loeffelbein cashed were for purchases; instead, she had an assistant manager simply deposit her checks in the register and remove an equivalent amount of cash. Second, the policy clearly establishes the maximum amount over the amount of a purchase an employee may write a check. Even if Loeffelbein had written the checks for the purpose of making a purchase, the amount of cash Loeffelbein removed from the register vastly exceeded the amount allowed by the policy.

The commissioner found that Loeffelbein "admitted that cashing the checks exceeded her authority and that she did so to get advances on her paychecks." The commissioner found that it was not reasonable for Loeffelbein to believe that, as a store manager, she was exempt from the company's check cashing limits. A commissioner is authorized to make his or her own independent determinations based on the record, including findings of witness credibility. Regan v. Dep't of Licensing, 130 Wn. App. 39, 59, 121 P.3d 731 (2005). We will not substitute our judgment for that of the commissioner regarding witness credibility or the weight of evidence. Affordable Cabs, Inc. v. Emp't Sec. Dep't, 124 Wn. App. 361, 367, 101 P.3d 440 (2004).

Loeffelbein argues that "[t]here was no warning issued, which is one stipulation for finding willful disregard of company rules under the Employment Security Act." But Loeffelbein provides no authority for this contention.[6] Loeffelbein further argues that: (1) her statements to Siler should be disregarded because they were made under duress, and (2) the fact that Bartell Drugs has since amended its personal check policy is proof that the existing policy was

---

[6] Although not entirely clear, it appears as though Loeffelbein is referring to cases decided prior to the adoption of RCW 50.04.294(2), defining per se misconduct. See, e.g., Hamel v. Emp't Sec. Dep't, 93 Wn. App. 140, 148, 966 P.2d 1282 (1998). ("[A]n employer's previous warnings to avoid certain behavior may provide strong evidence . . . that the conduct is inconsistent with the employer's interest."). These cases are inapposite.

-10-

vague. These claims are not part of the administrative record and we do not consider them. See RCW 34.05.558.

The evidence in the record was sufficient to support the commissioner's conclusion that Loeffelbein committed misconduct because she violated a reasonable company rule of which she was aware. We reverse the superior court and reinstate the commissioner's decision.[7]

We concur:

---

[7] Because Loeffelbein is not the prevailing party, it is unnecessary to address her request for an award of attorney fees and costs.